UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| Case No. | 5:25-cv-03271-SSS-BFM | Date | December 10, 2025 |
|---|---|---|---|
| Title | *Victor Hugo Huerta Estrada et al v. Kristi Noem* | | |

Present: The Honorable    SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:   (IN CHAMBERS) ORDER GRANTING PETITIONERS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [DKT. NO. 5]**

Before the Court is Petitioners' ex parte Application for a Temporary Restraining Order ("TRO") filed on December 4, 2025.  [Dkt. No. 5, "Application" or "App."].  Respondents filed their Opposition to the TRO on October 30, 2025.  [Dkt. No. 9, Opposition or "Opp."].  Petitioners submitted their Reply on December 6, 2025.  [Dkt. No. 10, "Reply"].  For the following reasons, the Court **GRANTS** Petitioners' TRO.

## I.   BACKGROUND

Petitioners are the following ten individuals: Victor Hugo Huerta Estrada; Karla Martinez Bardales; Alejandro Palominos Bautista; Gabriel Melchor Martinez; Eber Alexis Velasquez; Joel Alberto Lomeli Trejo; Pedro Moreno Acevedo; Leonardo Munoz Dominguez Camerino Villanueva Santana, and Julio David Vargas Flores.  [Dkt. No. 1 at 4–5, "Habeas Petition"].  Each of the Petitioners is currently detained at immigration detention centers in Adelanto, California, has pending removal proceedings, and is considered ineligible for bond hearings by the Executive Office for Immigration Review.  [*Id.* at 4–5, 10–15].

These noncitizens are each foreign nationals who, based on the facts alleged in the Habeas Petition and Application, would fall under the class definition in the recently certified class in *Maldonado Bautista v. Santacruz*. *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).[1]

The circumstances surrounding the Petitioners' arrest, detention, and inability to receive bond hearings are all too familiar with this Court. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 at *11 (C.D. Cal. Nov. 20, 2025) (granting partial summary judgment finding the DHS Policy denying bond hearings contrary to the INA); *Salgado Valenzuela v. Semaia*, 5:25-cv-02853-SSS-RAO (C.D. Cal. Nov. 25, 2025) (granting a petitioner's TRO on the same issue); *Lopez Pop v. Noem*, 5:25-cv-02589-SSS-SSC (C.D. Cal. Oct. 3, 2025) (granting a TRO on the same issue).

On December 4, 2025, Petitioners filed this petition seeking a writ of habeas corpus. [*See generally* Habeas Petition]. Petitioners allege their continued detention violates the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and the Fifth Amendment of the United

---

[1] This Order uses the term "noncitizenship" in place of "alienage" and "noncitizen" in place of "alien." The Court follows the U.S. Supreme Court and Ninth Circuit, where the use of the term "noncitizen" has become a common practice. *See Patel v. Garland*, 596 U.S. 328 (2022) (Barrett, J.); *United States v. Palomar-Santiago*, 593 U.S. 321 (2021) (Sotomayor, J.); *Barton v. Barr*, 590 U.S. 222, 226 n.2, (2020) (Kavanaugh, J.) ("This opinion uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" (citing 8 U.S.C. § 1101(a)(3))); *Avilez v. Garland*, 69 F.4th 525 (9th Cir. 2023); *Arce v. United States*, 899 F.3d 796 (9th Cir. 2018). Additionally, this Court thinks it is prudent to "avoid language that reasonable readers might find offensive or distracting—unless the biased language is central to the meaning of the writing." *Chicago Manual of Style Online* 5.253, https://www.chicagomanualofstyle.org/book/ed17/part2/ch05/psec253.html. As noted by the Ninth Circuit, "[t]he word alien can suggest 'strange,' 'different,' 'repugnant,' 'hostile,' and 'opposed[.]'" *Avilez*, 69 F.4th at 527 n.1 (citing *Alien*, *Webster's Third New International Dictionary* 53 (2002)). Accordingly, because the word "noncitizen" is synonymous and does not encompass such negative connotations, the Court finds "noncitizen" is a better word choice. *See Alien* and *Noncitizen*, *American Heritage Dictionary of English Language* 44, 1198 (5th ed. 2011).

States Constitution. [*Id.* at 16–18]. Petitioners seek relief consistent with this Court's Order in *Maldonado Bautista* in the form of release or a bond hearing. [*Id.* at 18].

On the same day of filing their Habeas Petition, Petitioners also filed an Application for a TRO. [*See generally* Application]. Petitioners' Application for a TRO requests that the Respondents be ordered to provide Petitioners an individualized bond hearing before an immigration judge pursuant to § 1226(a). [*Id.* at 30].

Respondents oppose the TRO, arguing that Petitioners are unlikely to succeed on the merits of their requested relief, that the Court lacks subject matter jurisdiction, or that Petitioners rely on an incorrect interpretation of the INA. [*See generally* Opposition].

For the reasons discussed below, the Court **GRANTS** Petitioners' TRO.[2]

## II.  LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a

---

[2] The Court notes that given Petitioners' membership in the Nationwide Class certified in *Maldonado Bautista*, each of the Petitioners is entitled to the corresponding declaratory relief as detailed in that matter. For purposes of completeness, the Court articulates the reasoning in this Order as applied to the individuals requesting the TRO.

result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).[3]

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction. *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.,* 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).  Under the sliding scale approach, Petitioners are entitled to a TRO if they have raised "serious questions going to the merits ... and the balance of hardships tips sharply in [his] favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III. DISCUSSION

Petitioners request the TRO because they believe their continued detention is contrary to this Court's decision in *Maldonado Bautista* as well as the proper interpretation of the INA.  [App. at 16–23].  The Application seeks relief in the form of an individualized bond hearing for each Petitioner before an Immigration Judge.  [*Id.* at 30].  Respondents' Opposition argues first that this Court lacks

---

[3] Ordinarily, the "circumstances justifying the issuance of an ex parte [temporary restraining] order are extremely limited." *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006).  To be entitled to an ex parte temporary restraining order, Plaintiffs must set out "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. Pro. 65(b)(1)(A).  However, because Petitioners has provided Respondents with notice of this ex parte filing, and Respondents have filed an Opposition, the Court will proceed.

jurisdiction over this matter. [Opp. at 11–14]. In the alternative, Respondents argue Petitioners fail to meet the requirements for a TRO. [*Id.* at 14–21].

### A. Jurisdiction

Article III "generally requires a federal court to satisfy itself of its jurisdiction over the subject matter before it considers the merits of a case," so this Court first considers Respondents' challenge to this Court's jurisdiction under 8 U.S.C. § 1252. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). In its Opposition, Respondents contend that § 1252(g) and § 1252(b)(9) preclude review of Petitioners' claims. [Opp. at 11]. The Court examines each subsection in turn.

#### 1. Section 1252(g)

Respondents first identify § 1252(g) as a bar to review by this Court. [Opp. at 11–12]. Section 1252(g), unless other laws provide jurisdiction, strips all courts of jurisdiction to hear "any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen] under this chapter." § 1252(g).

Respondents believe Petitioners' claims "stem from their detention during removal proceedings," which "[arose] from the decision to commence such proceedings against them." [Opp. at 12]. If Respondents' argument is true, then this Court would lack jurisdiction over this TRO.

The Supreme Court previously characterized § 1252(g) as a narrow provision, applying "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (emphasis in original). In doing so, the Supreme Court found it "implausible that the mention of *three discrete events* along the road to deportation was a shorthand way to referring to *all claims arising from* deportation proceedings." *Id.* (emphasis added).

Following the Supreme Court's guidance in *Reno*, this Court does not find that Petitioners' claim regarding the constitutionality of their arrest or whether they are subject to mandatory detention during the pendency of their removal proceedings falls under § 1252(g)'s prohibition on judicial review.

### 2. Section 1252(b)(9)

Moreover, Respondents cite to § 1252(b)(9) as channeling "judicial review of all questions of law . . . including interpretation and application of statutory provisions . . . arising from any action taken . . . to remove [a noncitizen] from the United States" to the appropriate federal court of appeals. [Opp. at 12–13 (citing Section 1252(b)(9))]. Although § 1252(b)(9) allocates judicial review to courts of appeals, this subsection has a much narrower reach than Respondents suggest.

Respondents' argument cites Supreme Court precedent that refers to § 1252(b)(9) as the "unmistakable 'zipper' clause" that "'channels judicial review of all [claims arising from deportation proceedings].'" [Opp. at 13, (citing *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 483 (1999)).] Though it may appear self-evident, it is important to note that § 1252(b)(9) exists under § 1252(b). Section 1252(b) lists "[r]equirements for review of orders of removal." § 1252(b). But 1252(b)(9) channels review of "final orders of removal" to federal courts of appeals.

Nothing in the record indicates that any order of removal has been issued for Petitioners. Rather, Petitioners have merely been detained after arrest without a bond hearing. Without an order of removal, § 1252(b)(9) alone does not bar this Court from reviewing Petitioners' TRO regarding the legality of their arrest or their right to receive a bond hearing pursuant to the INA.

Having established this Court's jurisdiction to review Petitioners' TRO, the Court now evaluates whether the TRO is appropriate.

### B. Right to Bond Hearing Under the INA

Petitioners request the Court immediately release them from detention or order an individualized bond hearing. [Habeas Petition at 18; App. at 30]. According to Petitioners, continued detention constitutes irreparable injury when they are statutorily entitled to a bond hearing. [*Id.* at 26]. Denying Petitioners of bond hearings prolongs their detention in violation of § 1226 and subjects them to the irreparable harms associated with immigration detention as recognized by the Ninth Circuit. [*Id.* (citing *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017) and *Maldonado Bautista et al. v. Santacruz, et al.*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal. July 28, 2025))]. As the TRO requests an individualized bond hearing, Petitioners insists granting the TRO is necessary to prevent continued detention without due process. [App. at 26, 28].

Respondents argue that this Court should deny the TRO for two primary reasons: (1) Petitioners cannot show a likelihood of success on the merits; and (2) the balance of hardships would favor the Respondents. [Opp. at 14–21]. As discussed by the parties, the Court evaluates whether Petitioners demonstrate the elements required to seek a TRO.

### 1. Serious Question Raised

Once again, the TRO presents a serious question that has been previously discussed by this Court and many others: whether it is legal to prolong Petitioners' detention without a bond hearing.[4]  [App. at 15–25].

Individuals detained under § 1226(a) are entitled to receive bond hearings at the outset of detention.  8 C.F.R. §§ 236.1(d)(1); *see also Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).  As articulated by the Ninth Circuit, "§ 1226(a) stands out from the other immigration detention provisions in key respects." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) (observing that § 1226(a) and its implementing regulations "provide extensive procedural protections that are unavailable under other detention provision").  Not only does § 1226(a) provide several layers of review of the agency's initial custody determination, but it also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.*

The Department of Homeland Security revisited its position on detention and release authorities, choosing unilaterally in July of 2025 to treat individuals arrested and detained under Section 236 of the INA as "applicants for admission" under Section 235.  [App. at 25].  While Respondents engage in extensive statutory interpretation in their Opposition to argue Petitioners are subject to Section 235,

---

[4] *See Maldonado Bautista v. Santacruz, Jr.*, 5:25-cv-01873-SSS-BFM, Dkt. No. 14 (C.D. Cal. July 28, 2025) (granting Petitioners' TRO on the same legal issue).  *See also Diaz Martinez v. HYDE, et al.*, No. CV 25-11613-BEM, 2025 WL 2084238 at *2–3 (D. Mass. July 24, 2025) (distinguishing § 1226, "a separate (non-mandatory) detention scheme applicable when an individual is 'already in the country'" from § 1225, which subjects "applicants for admission" to mandatory detention); *Rodriguez Vazquez v. Bostock, et al.*, 3:25-CV-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025) (granting summary judgment on the same issue).

and thus ineligible for a bond hearing, this is contrary to orders issued in district courts across the United States. [*See* App. at 9 (collecting authorities across judicial districts including this district)].

Consistent with this Court's order in *Bautista*, the Court maintains that detention under § 1225 applies to "applicants for admission," which fall into two categories as articulated in *Jennings*. *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225 subjects "[a]ny [noncitizen] subject to the procedure under [§ 1225]" to mandatory detention. § 1225(b)(1)(B)(iii)(IV). In contrast, as discussed above, § 1226(a) confers procedural protections to individuals apprehended and detained under that section of the INA. The juxtaposition of the procedural protections between these subsections suggests Congress intended that they apply to a different set of individuals.

Petitioners are not applicants for admission, and benefit from the procedural protections of § 1226(a). Respondents' suggestion that the Petitioners' interpretation of the INA is incorrect only emphasizes the serious nature of the question presented. This Court's description of the proper interpretation of the INA in *Maldonado Bautista* articulates the reasons for why Respondents' interpretation cannot be squared with the statutory text of the INA. *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 at *11 (C.D. Cal. Nov. 20, 2025).

Therefore, the Court holds that Petitioners' TRO raises a serious question as to the legitimacy of DHS's interpretation of the INA that has resulted in withholding protections that Petitioners would have otherwise been afforded under § 1226(a).

### 2. Likelihood of Irreparable Harm

Respondents do not at all address the likelihood of irreparable harm. Instead, Respondents merely frame harm in the context of their interest in enforcing immigration laws. Respondents state that "Petitioners' requests for broad injunctive relief . . . is not narrowly tailored to the harm asserted." [Opp. at 21]. In other words, Respondents believe that continued detention is warranted even though Petitioners may not pose a criminal danger or flight risk. [*Id.*]. Respondents' disregard for the implications of the new DHS policy and its denial of procedural protections to noncitizens is troubling.

Petitioners cite to the irreparable harms described by the Ninth Circuit in *Hernandez v. Sessions* that are "imposed on anyone subject to immigration

detention." [App. at 26]. 827 F.2d at 995. Moreover, Petitioners allege irreparable harm to their legal rights as discussed in *Maldonado Bautista*. [*Id.*].

The Court finds that Petitioners' continued detention without an initial bond hearing constitutes immediate and irreparable injury, as this violates statutory rights afforded under § 1226(a). *See Rodriguez Diaz*, 53 F.4th at 1202.

### 3. Balance of Hardships and Public Interest

The balance of the hardships tips strongly in Petitioners' favor as they will suffer great hardship if this Court were to deny the TRO. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (requiring the balance of hardships to "tip sharply" in the moving party's favor).

Respondents believe the BIA is better postured than this Court to resolve disputes like this and "provide clear and uniform guidance." [Opp. at 10–11]. Nevertheless, given the relatively uniform nature of district court decisions involving the legality of the DHS's new interpretation of the INA and the BIA's refusal to adhere to the reasoning in those decisions, the Court is doubtful that granting the TRO would disrupt the status quo, especially when the change in policy stands to jeopardize Petitioners' rights.

Petitioners finally argue that the TRO would serve the public interest as their claims would uphold procedural protections against unlawful detention. [App. at 26–27]. Where Petitioners' argument is premised on the unlawful nature of Respondents' conduct, the Court agrees that it serves neither equity nor the public interest to allow continued violations of federal law. *See Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022).

Thus, the Court finds the public interest weighs in favor of Petitioners. Their continued detention without the legal protections afforded under § 1226(a) violates Petitioners' due process rights. [*See generally* App.; Dkt. 1]. *See Xuyue Zhang v. Barr*, 612 F.Supp.3d 1005, 1017 (C.D. Cal.) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all

citizens have a stake in upholding the Constitution."). As such, the Court finds that both factors weigh heavily in favor of Petitioners.[5]

## IV. CONCLUSION

The Court finds the TRO raises serious questions concerning the merits of the case, the balance of the hardships tips sharply in Petitioners' favor, they are likely to suffer irreparable harm in the form of continued detention without an initial bond hearing, and granting their requested relief is in the public interest. Accordingly, the Court finds that the TRO is necessary to prevent the immediate and irreparable injury that may occur. As such, the TRO is **GRANTED**. [Dkt. No. 5].

In accordance with the above, pursuant to Federal Rule of Civil Procedure 65, it is **ORDERED THAT**:

- Respondents are enjoined from continuing to detain Petitioners unless they are provided with individualized bond hearings before an immigration judge pursuant to 8 U.S.C. § 1226(a) within 7 days of the date of this Order;

- Consistent with the Court's previous order from December 5, 2025, Respondents are enjoined from transferring, relocating, or removing Petitioners from the Central District of California without further order of the Court and pending final resolution of this litigation. [*See* Dkt. No. 8].

This Order shall be in effect **until January 9, 2026**. The Court **ORDERS** Respondents **TO SHOW CAUSE** as to why a preliminary injunction should not issue. Respondents shall file any response by **Friday December 19, 2025**, and Petitioners shall file any reply by noon on **Friday December 26, 2025**. The Court

---

[5] Respondents do not address, and therefore fail to oppose, Petitioners' argument regarding waiving administrative exhaustion of remedies. [*See* App. at 27–28]. The Court, however, notes that for reasons consistent with its prior TROs granted in similar circumstances, waiving exhaustion of administrative remedies would be warranted in Petitioners' circumstances. *See Salgado Valenzuela v. Semaia*, 5:25-cv-02853-SSS-RAO (C.D. Cal. Nov. 25, 2025) (discussing grounds for waiving exhaustion).

**SETS** a hearing in person on whether a preliminary injunction should issue on **January 9, 2026 at 2:00 PM,** in Courtroom 2, on the 2nd Floor of the George E. Brown, Jr. Federal Building and United States Courthouse at 3470 Twelfth Street, Riverside, California 92501.

**IT IS SO ORDERED**.